IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FOSTER, ET AL.                          :
                                        :     CIVIL ACTION
        v.                              :     NO. 10-5755
                                        :
USAA CASUALTY INSURANCE CO.             :

**SURRICK, J.**                                    **DECEMBER** 31**, 2013**

## MEMORANDUM

Presently before the Court is Defendant USAA Casualty Insurance Company's Motion for Summary Judgment.  (ECF No. 20.)  For the following reasons, Defendant's Motion will be granted in part and denied in part.

## I.      BACKGROUND

### A.      Procedural History

On September 13, 2010, Plaintiffs Ronald T. Foster and Olga L. Foster, residents of Pennsylvania, filed a Complaint in the Court of Common Pleas of Philadelphia County against Defendant USAA Casualty Insurance Company, a Texas corporation with its principal place of business in Texas.  (Compl., Notice of Removal Ex. A, ECF No. 1.)  The Complaint included claims by Ronald Foster for breach of contract and bad faith, and by Olga Foster for loss of consortium.  (*Id.*)  On September 28, 2010, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1332 and 1441, *et seq*.  (Notice of Removal.)  On March 7, 2011, Plaintiffs filed an Amended Complaint.  (Am. Compl., ECF No. 9.)  In the Amended Complaint, Ronald Foster set forth claims against Defendant for breach of contract and bad faith related to his insurance contract with Defendant.  (Am. Compl.)  The Amended Complaint did not include the claim by

Olga Foster for loss of consortium.  (Am. Compl.)[1]  On May 2, 2011, Defendant filed a counterclaim seeking a declaratory judgment against Plaintiffs, pursuant to 28 U.S.C. § 2201. (Def.'s Answer, ECF No. 12.)  On August 19, 2011, Defendant filed the instant Motion for Summary Judgment.  (Def.'s Mot., ECF No. 20.)  Plaintiff filed a response in opposition to the Motion on September 20, 2011.  (Pl.'s Opp'n, ECF No. 21.)  Defendant replied to Plaintiff's Opposition on October 22, 2011.  (Def.'s Reply, ECF No. 25.)

**B.      Factual History**

On March 28, 2008, Defendant quoted Plaintiff a price for an insurance policy that would cover three automobiles:  a 1999 Dodge Dakota; a 1998 Chevrolet Malibu; and a 2000 Chevrolet Cavalier.  (Def.'s Mot. Ex. B.)  In obtaining this price quote, Plaintiff filled out an online form and spoke with Defendant's representative over the phone.  (Foster Dep. 12-20, Def.'s Mot. Ex. C.)  At the time, Plaintiff also owned a 1986 Yamaha motorcycle that was covered under a separate GEICO insurance policy.  (*Id.* at 39, 86.)  On April 16, 2008, Defendant issued an automobile insurance policy (the "Policy") to Plaintiff with effective dates of April 17, 2008 to October 17, 2008.  (Policy Packet 2-3, Def.'s Mot. Ex. E.)  The Policy provided insurance coverage for the vehicles that Plaintiff had originally inquired about:  a 1999 Dodge Dakota; a 1998 Chevrolet Malibu; and a 2000 Chevrolet Cavalier (the "Covered Vehicles").  (*Id.* at 6.) The Policy included underinsured motorist ("UIM") coverage "stacked" for the Covered Vehicles with policy limits of $100,000 per person and $300,000 per occurrence.  (*Id.* at 6.)

Defendant mailed the Policy to Plaintiff on April 16, 2008.  (Webb Dep., Def.'s Mot. Ex. F.)  The materials sent to Plaintiff included:  (1) a cover letter; (2) insurance cards for each of the Covered Vehicles; (3) declarations pages; (4) supplemental information pages reflecting

---

[1] Nevertheless, Olga L. Foster is still named as a Plaintiff in this action.

premium discounts and credits; (5) policy provisions describing the terms, conditions, and

exclusions applicable to Plaintiff's coverage; and (6) various information forms, not considered a

part of the Policy, but required by Pennsylvania law.  (Policy Packet.)  The cover letter to the

materials said:  "Refer to your Declarations Page and endorsements to verify that coverages,

limits, deductibles and other policy details are correct and meet your insurance needs.  Required

information forms are also enclosed for your review."  (*Id.* at 2.)

 Within the materials sent to Plaintiff was Form 5100PA(01), entitled

"**PENNSYLVANIA AUTO POLICY**[.]"  (*Id.* at 22 (emphasis in original).)  The first page of

Form 5100PA(01) said "READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS

CAREFULLY" and "[t]he automobile insurance contract between the named insured and the

company shown on the Declarations page consists of this policy plus the Declarations pages and

any applicable endorsements."  (*Id.*)  Part C of this form described the UIM coverage available to

Plaintiff and listed the following exclusion:

> B. We do not provide UIM Coverage for BI sustained by any covered person
> while occupying, or when struck by, any motor vehicle owned by you or any
> family member which is not insured for UIM Coverage under this or any other
> policy.  This includes a trailer of any type used with that vehicle.

(*Id.* at 36-38.)  Also included in the materials sent to Plaintiff was Form A100PA(03), entitled

"**AMENDMENT OF POLICY PROVISIONS PENNSYLVANIA**[.]"  (*Id.* at 11 (emphasis in

original).)  The first line of Form A100PA(03) stated "[t]his Amendment forms a part of the auto

policy to which it is attached, and it modifies that policy as follows:[.]"  (*Id.* at 11.)  One of the

listed modifications referenced UIM coverage stating,

> Exclusion B. is replaced by the following:  We do not provide UIM Coverage for
> BI sustained by any covered person while occupying, or when struck by, any
> motor vehicle owned or regularly used by you or any family member which is not
> insured for UIM Coverage under this policy.  This includes a trailer of any type
> used with that vehicle.

3

(*Id.* at 14.)  Form A100PA(03) appeared before Form 5100PA(01) in the materials sent to

Plaintiff.  (*Id.*)  The entire Policy Packet was stapled together.  (Webb Dep. 159.)  Plaintiff states

that based on the documents in the Policy Packet, he believed that the Policy was made up of

Form 5100PA(01), the declarations page, and any endorsements.  (*See* Foster Aff. ¶ 2, ECF No.

22.)  Plaintiff advises that he carefully reviewed Form 5100PA(01), the declarations pages, and

the document titled as an endorsement.  (*Id.* at ¶ 13.)  He does not recall reading Form

A100PA(03) (Foster Dep. 42-43), and he did not think Form A100PA(03) was part of his Policy

(Foster Aff. ¶ 60).

On September 13, 2008, Defendant renewed Plaintiff's Policy, with effective dates of

October 17, 2008 to April 17, 2009.  (Webb. Dep. 163.)  On the same date, Defendant sent

Plaintiff a packet of materials related to his renewal.  (Def.'s Mot. Ex. G.)  On March 11, 2009,

Defendant again renewed Plaintiff's Policy, with effective dates of April 17, 2009 to October 17,

2009.  Defendant again sent Plaintiff a packet of materials related to his renewal.  (Def.'s Mot.

Ex. H.)

On July 2, 2009, Plaintiff was injured in an automobile accident that took place on

American Parkway, in Allentown, Lehigh County, Pennsylvania.  (Am. Compl. ¶¶ 6-9; Def.'s

Mot. ¶ 44.)  When the accident occurred, Plaintiff was operating his motorcycle, and he was

struck by the vehicle of the tortfeasor.  (Am. Compl. ¶¶ 6-7; Def.'s Mot. ¶ 45.)  At that time, the

tortfeasor's automobile insurance policy with 21st Century Insurance had liability limits of

$100,000.  (Am. Compl. ¶ 15; Def.'s Mot. ¶ 46.)  In October 2009, Plaintiff settled his claim

against the tortfeasor for the $100,000 policy limits on her automobile insurance policy.  (Am.

Compl. ¶ 32; Def.'s Mot. ¶ 49.)  Also at the time of the accident, the GEICO insurance policy

that covered Plaintiff's motorcycle had UIM coverage of $100,000.  (Am. Compl. ¶ 17; Def.'s

Mot. ¶ 47.)  After the accident, Plaintiff submitted a claim to GEICO under the motorcycle's insurance policy.  The claim was settled for the UIM limits of $100,000 in September 2009. (Am. Compl. ¶¶ 17, 31; Def.'s Mot. ¶¶ 47-48.)

On August 19, 2009, Plaintiff's counsel notified Defendant of Plaintiff's intention to pursue a claim for UIM benefits under the Policy.  (Am. Compl. ¶ 21; Def.'s Mot. ¶ 50.)  On August 21, 2009, Defendant informed Plaintiff via letter that it was investigating his claim for UIM benefits but that it may not be covered under the Policy because the motorcycle was not a Covered Vehicle.  (Def.'s Mot. Ex. I.)  On August 25, 2009, Defendant denied Plaintiff the requested UIM coverage.  (Def.'s Mot. Ex. J.)  On March 16, 2010, Plaintiff made a written demand for UIM coverage under the Policy.  (Am. Compl. ¶ 23; Def.'s Mot. ¶ 56.)  On April 14, 2010, Defendant again notified Plaintiff via letter that his claim was not covered under the Policy because of the exclusion for bodily injury sustained "by any covered person while occupying, or when struck by, any motor vehicle owned or regularly used by you or your family member which is not insured for UIM coverage under this policy."  (Def.'s Mot. Ex. K.)  On May 6, 2010, Defendant sent Plaintiff another letter explaining that the exclusionary language referenced in the previous letter was found in Form A100PA(03), which was an "Amendatory Endorsement" that was "part of the policy."  (Def.'s Mot. Ex. L.)  On July 7, 2010, Defendant sent Plaintiff a final letter reiterating that Plaintiff's claim for UIM benefits was not covered under the Policy.  (Def.'s Mot. Ex. M.)

## C. LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); s*ee also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence

of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . ."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The nonmoving party may not avert summary judgment by relying on speculation or by rehashing the allegations in the pleadings. *Ridgewood Bd. of Educ. v. N.E. for M.E.,* 172 F.3d 238, 252 (3d Cir. 1999). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. Moreover, courts must not resolve factual disputes or make credibility determinations. *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1127 (3d Cir. 1995).

### D. DISCUSSION[2]

Defendant claims that under Pennsylvania law, it is entitled to summary judgment on its counterclaim for declaratory judgment and on Plaintiff's claims for breach of contract and bad faith.[3]  Defendant argues that summary judgment is proper because the exclusionary language in Form A100PA(03) precludes Plaintiff from recovering UIM benefits for injuries sustained while operating a vehicle that is not covered under the Policy, and Plaintiff was injured while operating his motorcycle that was not covered under the Policy.  Defendant specifically contends that Form A100PA(03) was part of Plaintiffs' Policy because Form A100PA(03) clearly and conspicuously stated that it was part of and modified the insurance policy to which it was attached.  Defendant also argues that the exclusionary language in Form A100PA(03) itself is enforceable because it was clear, unambiguous, and conspicuously displayed.  In response, Plaintiff does not claim that material issues of fact exist but contends that Form A100PA(03) and the exclusionary language within it was not part of the Policy because Defendant did not clearly inform Plaintiff that Form A100PA(03) was part of the Policy.  Plaintiff does not take issue with the clarity of the actual exclusionary language in Form A100PA(03).  (Pl.'s Opp'n 29.)

---

[2] Pennsylvania substantive law governs this matter.  Pennsylvania choice of law rules dictate that an insurance contract is governed by the law of the state in which the contract was made.  *Travelers Indem. Co. v. Fantozzi*, 825 F. Supp. 80, 84 (E.D. Pa. 1993).  Here, there is no dispute that the contract was made in Pennsylvania.

[3] Defendant seeks declaratory judgment that:  (1) Plaintiff's 1986 Yamaha motorcycle was not insured for UIM benefits under the Policy; (2) Plaintiff owned and was occupying the 1986 Yamaha motorcycle at the time of the July 2, 2009 automobile accident; (3) Defendant did not owe UIM benefits under the Policy to Plaintiff for the July 2, 2009 automobile accident; (4) Defendant properly denied Plaintiff's claim for UIM benefits under the Policy; (5) Defendant did not act in bad faith in handling and/or denying the claim presented to it by Plaintiff in connection with the July 2, 2009 automobile accident; (6) Defendant is not liable for attorneys' fees, costs, or any bad faith damages arising out of the claim presented to it by Plaintiff in connection with the July 2, 2009 automobile accident; and (7) Defendant is entitled to judgment in its favor with

### A.      Form A100PA(03) as Part of the Policy

"Interpretation of an insurance contract is a matter of law and is therefore generally performed by a court rather than by a jury." *Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1231 (Pa. Super. Ct. 2002).  Where language of an insurance contract is clear and unambiguous, a court must give effect to that language.  *Standard Venetian Blind Co. v. Amer. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).  Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (internal quotations omitted).  Whether a contract contains ambiguities "is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.*  Still, "[a] court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981).  "In the event that ambiguities do exist in the wording adopted by the insurance company, then the provisions must be resolved in favor of the insured." *Id.*

At issue here is whether Form A100PA(03)—and the exclusionary language within it— was part of Plaintiff's Policy.  In determining whether Form A100PA(03) was part of Plaintiff's Policy, we must look to the actual language of Form A100PA(03) to see if it clearly and unambiguously stated that it was part of Plaintiff's Policy.  Form A100PA(03) is boldly titled "**AMENDMENT OF POLICY PROVISIONS PENNSYLVANIA**" and explicitly states at the top of the document that "[t]his Amendment forms a part of the auto policy to which it is attached, and it modifies that policy as follows[.]"  Form A100PA(03) precedes Form

---

respect to Courts I and II of Plaintiffs' Amended Complaint and with respect to this counterclaim.  (Def.'s Answer 19.)

5100PA(01) titled "**PENNSYLVANIA AUTO POLICY**," in the Policy Packet that was mailed to Plaintiff, and the two forms were stapled together.  From this language, it is evident that Form A100PA(03) clearly and unambiguously established that it was to be considered a part of whatever auto policy was attached to it.  The language of Form A100PA(03) cannot be considered ambiguous.  Given these facts, the only reasonable interpretation of the language in Form A100PA(03) was that it was part of and modified Form 5100PA(01)—"THE PENNSYLVANIA AUTO POLICY"—the form that A100PA(03) was physically attached to via staple.

We reject Plaintiff's arguments that the language in Form A100PA(03) was reasonably susceptible to different constructions.  Plaintiff first argues that the use of the word "attached" was ambiguous because it customarily means that the supplemental document is connected to the end of the original document, and here Form A100PA(03) preceded Form 5100PA(01).  (Pl.'s Opp'n 14-16.)  The word attached is not ambiguous in this context because regardless of the order of the documents, Forms A100PA(03) and 5100PA(01) were stapled together making it clear and unambiguous that the forms were attached to each other and that Form A100PA(03) was referring to Form 5100PA(01).  *See Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007) ("Words of 'common usage' in an insurance policy are to be construed in their natural, plain, and ordinary sense. . . . If the terms of a policy are clear, this Court cannot rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used.").  Plaintiff next argues that the word "amendment" created an ambiguity because amendments normally apply after receiving an initial contract and this amendment appeared in the Policy Packet with the initial contract.  (Pl.'s Opp'n 14.)  This argument is unpersuasive, as Plaintiff admitted that the word "amendment" generally means a change (Foster Dep. 33) and the

9

word was used consistently with that ordinary meaning here:  Form A100PA(03) changed

provisions in Form 5100PA(01).  Further, the language following the word clearly established

that the amendment did apply to Plaintiff's Policy, despite Plaintiff's assertion that he

subjectively understood otherwise.

      Plaintiff's next argument asserts not that Form A100PA(03) was unclear but rather that

other forms in the Policy Packet were ambiguous.  Plaintiff claims that Defendant did not clearly

and unambiguously identify Form A100PA(03) as being part of the Policy in other documents

within the Policy Packet, and as a result, Plaintiff had no obligation to pay attention to or read the

language in Form A100PA(03).  (*See* Pl.'s Opp'n 10.)  This argument is perplexing.  First, we

see no reason why Defendant was required to explicitly state that Form A100PA(03) was part of

the Policy when the language of Form A100PA(03) clearly and unambiguously established that

very fact.  Second, we reject Plaintiff's contention that other documents in the Policy Packet

were ambiguous such that they could have been reasonably interpreted as advising Plaintiff that

Form A100PA(03) was not part of his Policy and thus Plaintiff had no obligation to read it.

      Plaintiff claims that the language in Form 5100PA(01) that states "READ YOUR

POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY" and the language in the

cover letter of the Policy Packet that states, "[t]he automobile insurance contract between the

named insured and the company shown on the Declarations page consists of this policy plus the

Declarations page and any applicable endorsements" is ambiguous.  Specifically, he claims that a

reasonable interpretation of the language in these documents led him to believe that his Policy

was made up of only Form 5100PA(01), the declarations pages, and the one document titled

"endorsement."  He claims that because Form A100PA(03) was not titled an endorsement, the

documents in the Policy Packet were ambiguous, and it was reasonable for him to think that

Form A100PA(03) was not part of the Policy.  To support his argument, Plaintiff submitted a

lengthy Opposition Brief and Affidavit outlining his subjective beliefs and assumptions with

respect to the language in Form 5100PA(01) and the cover letter.  We note, however, that the

presence of an ambiguity is measured by an objective standard, not a subjective standard.  *Betz v.*

*Erie Ins. Exch.*, 957 A.2d 1244, 1255 n.3 (citing *Consulting Eng'rs Inc. v. Ins. Co. of N. Amer.*,

710 A.2d 82 (Pa. Super. Ct. 1998) ("Only where reasonably intelligent men, considering the

word in the context of the entire policy, would honestly differ as to its meaning, will an

ambiguity be found.'").  And "[p]arties' disagreement as to the meaning of a policy does not

make it ambiguous."  *Heebner v. Nationwide Ins. Enter.*, 818 F. Supp. 2d 853, 857 (E.D. Pa.

2011).  From an objective standpoint, the language in Form 5100PA(01) and the cover letter are

not subject to more than one reasonable interpretation here.  The documents clearly and

unambiguously stated that Plaintiff should read his policy carefully.  Form A100PA(03) clearly

and unambiguously stated that it was part of Plaintiff's Policy.  Plaintiff's subjective

interpretation of the language in Form 5100PA(01) and the cover letter to mean that that Form

A100PA(03) was not part of his policy or that it was unimportant because it was titled

"**AMENDMENT OF POLICY PROVISIONS PENNSYLVANIA**" instead of "endorsement"

was not reasonable.  Accordingly, no ambiguity existed and the language in Form 5100PA(01),

the cover letter, and Form A100PA(03) will all be applied consistent with the plain, ordinary

meaning of the unambiguous terms.

The plain and ordinary meaning of the language in Form A100PA(03) establishes that

Form A100PA(03) was part of Plaintiff's Policy.  As such, the exclusionary language within

Form A100PA(03) was part of Plaintiff's Policy.  Nevertheless, when an insurer relies on a

policy limitation or exclusion as a basis for its denial of coverage, the insurer has the burden of

proving such exclusion applies.  *See Madison Const. Co.*, 735 A.2d at 106.  Provisions similar to

the exclusionary language in Form A100PA(03) have consistently been held as valid,

unambiguous, and enforceable.  *Nationwide Mut. Ins. Co. v. Roth*, 252 F. App'x 505, 506-07 (3d

Cir. 2007).  Moreover, Plaintiff concedes that the exclusionary language in Form A100PA(03) is

valid.  (Pl.'s Opp'n 29.)

     **B.**     **Enforceability of Exclusionary Language**

     Despite conceding that the exclusionary language in Form A100PA(03) is valid, Plaintiff

claims that the exclusionary language still should not be enforced in the interest of public policy.

(Pl.'s Opp'n 37.)  Plaintiff cites the case of *Tonkovic v. State Farm Mutual Automobile Insurance

Co.*, 521 A.2d 920, 924 (Pa. 1987), in support of his argument.  In *Tankovic*, the Supreme Court

of Pennsylvania reiterated that "in light of the manifest inequality of bargaining power between

an insurance company and a purchaser of insurance, a court may on occasion be justified in

deviating from the plain language of a contract of insurance."  *Id.* at 924 (quoting *Standard

Venetian Blind Co.*, 469 A.2d at 567).  In *Tonkovic,* the court held that where an individual

applies and prepays for specific insurance coverage, the insurer may not unilaterally change the

coverage provided without an affirmative showing that the insured was notified of, and

understood the change, regardless of whether the insured read the policy.  *Id.* at 925.  *Tonkovic*

does not apply here.  Plaintiff did not apply for insurance coverage from Defendant for his

motorcycle or pay premiums for coverage on his motorcycle.  In fact, Defendant was not in the

business of providing motorcycle insurance at the time that it issued Plaintiff's Policy.  (Def.'s

Mot. Ex. D ¶ 6.)  Contrary to Plaintiff's assertion, it would not be in the public interest to require

coverage here.  *Nationwide Mut. Ins. Co. v. Riley*, 352 F.3d 804, 810-11 (3d Cir. 2003)

(reiterating that voiding a household exclusion clause similar to the one at issue in Plaintiff's

Policy "'would empower insureds to collect UIM benefits multiplied by the number of insurance policies on which they could qualify . . .'" and receive benefits far in excess of the amount of coverage for which they paid) (quoting *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 754 (Pa. 2002)).

In addition, any subjective expectation by Plaintiff that his Policy provided UIM benefits for the motorcycle was unreasonable given the terms of the Policy. "In most cases, the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations" unless some action on the part of the insurer unreasonably obscures the terms or outright deceives the insured. *Mu'Min v. Allstate Prop. & Cas. Ins. Co.*, No. 10-7006, 2011 WL 3664301, at *13 (E.D. Pa. Aug. 17, 2011). In this case, the language of the Policy clearly and unambiguously excluded UIM benefits for injuries sustained while operating vehicles not covered under the Policy. Even more, the exclusion was conspicuously displayed in Form A100PA(03). There is no evidence, and Plaintiff makes no allegation, that Defendant obscured or deceived Plaintiff so as to make him think that he would receive UIM benefits for his motorcycle. Rather, it appears that Plaintiff determined that his motorcycle was covered for UIM benefits because he failed to read his entire Policy. Such failure by Plaintiff is not a valid reason to not enforce a provision of an insurance contract. When "the policy limitation relied upon . . . is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Standard Venetian Blind Co.,* 469 A.2d at 567. Consequently, any expectation by Plaintiff that he would receive UIM coverage for his motorcycle, even though the motorcycle was not covered under the Policy, and when the plain language of the Policy clearly and

conspicuously excluded such coverage, was unreasonable.  We are satisfied that the exclusionary language in Form A100PA(03) is valid and should be enforced.

### C.      Application of Exclusionary Language

Form A100PA(03) is part of Plaintiff's Policy, and Form A100PA(03) contains a valid and enforceable provision that excludes Plaintiff from recovering UIM benefits for injuries sustained while operating a vehicle that is not covered by the Policy.  On July 2, 2009, Plaintiff was injured in a motor vehicle accident while he was operating his motorcycle, which was not a vehicle covered under the Policy.  Because Plaintiff was operating a vehicle not covered by the Policy, Plaintiff is not entitled to UIM benefits under the Policy, and Defendant properly denied Plaintiff insurance coverage.  Accordingly, we will grant summary judgment on Plaintiff's claims for breach of contract and bad faith.  Plaintiff cannot establish the necessary elements of a bad faith claim because Defendant had no obligation to provide insurance coverage for the July 2, 2009 accident.  *See, e.g., Morrison v. Mountain Laurel Assurance Co.,* 748 A.2d 689, 691 (Pa. Super. Ct. 2000) (noting where a plaintiff cannot demonstrate that denial of coverage was unreasonable, bad faith cannot be established).  Similarly, Plaintiff cannot establish a claim for breach of contract because Defendant acted in accordance with the terms of the Policy when denying Plaintiff UIM coverage.  *See, e.g., Johnson v. Fenestra, Inc.*, 305 F.2d 179, 181 (3d Cir. 1962) (noting that a party breaches a contract when it fails to do something which it has expressly agreed to do).  Finally, since we have already determined that Plaintiff's claims for breach of contract and bad faith must be dismissed because Plaintiff's insurance policy with Defendant did not provide UIM coverage for injuries sustained by Plaintiff in the motorcycle accident on July 2, 2009 on American Parkway in Allentown, Lehigh County, Pennsylvania, Defendant's counterclaim for declaratory judgment is dismissed as moot.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant USAA Casualty Insurance Company's Motion for

Summary Judgment will be granted in part and denied in part.  An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**
